***********
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Baddour and the briefs and arguments of the parties. The appealing party has not shown good grounds to reconsider the evidence, receive further evidence, or rehear the parties. The Full Commission affirms with modifications the Opinion and Award of Deputy Commissioner Baddour and enters the following Opinion and Award.
 ***********
The Full Commission finds as a fact and concludes as matters of law the following, which were entered into by the parties as:
 STIPULATIONS *Page 2 
1. All parties are properly before the Industrial Commission, and the Industrial Commission has jurisdiction over this matter.
2. All parties are subject to and bound by the North Carolina Workers' Compensation Act.
3. All parties have been properly designated, and there is no question as to joinder or non-joinder of parties.
4. An employment relationship existed between the plaintiff and the employer-defendant during all relevant times.
 *********** EXHIBITS
The following exhibits were admitted into evidence:
 • Stipulated Exhibit 1: Pre-Trial Agreement
 • Stipulated Exhibit 2: Industrial Commission Forms and Pleadings
 • Stipulated Exhibit 3: Medical Records
 • Stipulated Exhibit 4: Recorded Statement, Discovery Responses, Employment File, Earnings Statement, and Attendance Records.
 • Stipulated Exhibit 5: Plaintiff's Supplemental Discovery Responses
 • Stipulated Exhibit 6: Additional Medical Records
 • Stipulated Exhibit 7: Time Records
 • Stipulated Exhibit 8: Wake Med Medical Records
 • Stipulated Exhibit 9: Dr. Suh Medical Records
 • Stipulated Exhibit 10: Accent Urgent Care Medical Records
 • Stipulated Exhibit 11: Concentra Medical Center Medical Records *Page 3 
 • Plaintiff's Exhibit 1: Incident Reports and Other Documentation
 • Defendants' Exhibit 1: Report of Accident by Plaintiff
 • Defendants' Exhibit 2: Accident Report by Stephanie Wright
 • Defendants' Exhibit 3: Supervisor's Field Notes and Accident Report
 • Defendants' Exhibit 4: Employee's Report of Work Injury
 • Defendants' Exhibit 5: DVD Containing Video of the Incident
 • Defendants' Exhibit 6: Subpoena for Witness
 ***********
Based upon all the competent evidence from the record, the Full Commission finds as follows:
 FINDINGS OF FACT
1. Plaintiff is 52 years old. She has an 11th grade education and has been employed with defendant Capital Area Transit since 2001. Prior to this employment, she worked in food service jobs.
2. Prior to 2007, plaintiff was involved in three vehicular accidents while driving buses for defendant. She was not at fault in any of the accidents. Plaintiff injured her neck, back and arm in the incidents and defendants paid for her medical treatment.
3. Immediately prior to the accident in March 2007, plaintiff had not been experiencing any pain in her neck or back, although she already had degenerative disc disease.
4. On March 9, 2007, plaintiff was driving bus #103. Plaintiff parked her bus behind bus #1235 while waiting to commence her route at the bus station. Bus #1235 began to roll backwards toward plaintiff's bus and tapped the front of plaintiff's bus. Bus #1235 was being operated by Stephanie Wright. The area around the bus station was essentially flat. *Page 4 
5. Plaintiff claims that she was injured when the buses came in contact. In her recorded statement plaintiff indicated that the incident caused her to jerk her neck. At the hearing before the deputy commissioner, plaintiff testified that when the buses made contact it threw her back and she heard something pop. However, the accident reports completed by plaintiff and Ms. Wright do not indicate that anyone was injured. Plaintiff did not note on the report that the incident caused her neck and back to jerk. In addition, the Raleigh Police Department refused to file a report due to the lack of damage to the vehicles and lack of injuries.
6. According to the video surveillance from bus # 1235 operated by Ms. Wright, Ms. Wright was standing at the time the buses made contact. The incident did not cause Ms. Wright to be jerked or to fall. Ms. Wright indicated that she felt only a nudge when the buses made contact.
7. Immediately following the incident, plaintiff exited her bus, re-entered her bus to get what appears to be a black shoulder bag, and then exited the bus again. At approximately 5:15 p.m. plaintiff continued her shift.
8. Plaintiff claims that her neck began to feel sore approximately one hour following the incident and the pain increased throughout the evening. After she finished her shift, plaintiff filled out an accident report and an injury report stating she had injured her neck, back, and shoulders. One of plaintiff's co-workers, Vickie Black, saw plaintiff approximately one hour after the incident, but plaintiff did not report neck pain.
9. On March 10, 2007, the day following the incident, plaintiff went to the Wake Medical Center Emergency Room. Plaintiff's chief complaint was neck pain. Plaintiff provided a history of while sitting as the driver of her bus, another bus rolled approximately ten feet and tapped the front of plaintiff's bus. Plaintiff indicated to emergency room staff that her alleged *Page 5 
injuries were a legal case and that she had legal representation. Plaintiff denied any cervical tenderness. Upon physical examination, plaintiff's neck did not reveal tenderness and plaintiff had good range of motion. Dr. Graham Snyder who saw plaintiff in the emergency room notes that plaintiff's alleged mechanism of injury and exam appear to be physiologically impossible to relate to her accident.
10. Dr. Snyder discharged plaintiff the same day with a reported pain level of two. Plaintiff's discharge instructions were to take two extra strength Tylenol every four hours for soreness and to soak in warm bath to feel better.
11. On March 12, 2007, plaintiff sought medical treatment with Dr. Landolf at Concentra where she complained of shoulder, back, and neck pain with her shoulder being the chief complaint. Dr. Landolf noted that plaintiff was involved in a rear-end motor vehicle collision at ten miles per hour. Plaintiff reported that her pain started approximately two to three hours after the incident. An x-ray of plaintiff's cervical spine revealed degenerative changes with anterior osteophytes at C5 and C6 and a reversal of the normal curvature . Dr. Landolf diagnosed plaintiff with cervical strain and mild degeneration of cervical intervertebral disc. Plaintiff was restricted to no lifting over fifteen pounds and no pushing or pulling over thirty pounds of force. Plaintiff was also restricted to no overhead lifting and no driving of the bus. Plaintiff was prescribed Ibuprofen and referred to physical therapy.
12. Plaintiff continued to work light duty and was released to regular duty on March 15, 2007 at which time Dr. Landolf noted that plaintiff's cervical strain had resolved. On March 21, 2007 plaintiff presented to Dr. Landolf with a chief complaint of shoulder pain and for a re-evaluation for neck pain and upper back pain. Dr. Landolf noted that plaintiff had been working regular duty and had noted improvement. Plaintiff complained of non-radiating pain and *Page 6 
soreness in upper back, but had no problems with function. Plaintiff had full range of motion in neck and shoulders. On this day, plaintiff was diagnosed with trapezius strain and continued on regular duty. Plaintiff returned to Dr. Landolf on March 27, 2007 with normal range of motion in her neck, back, and shoulders, and was continued on regular activity.
13. On April 10, 2007 plaintiff reported to Dr. Landolf that she felt better and had no problems with function or driving the bus, and that her doctor had previously told her that she had arthritis in her neck for which he referred plaintiff to her primary care physician. Plaintiff was continued on regular activity and released from care.
14. On June 13, 2007, plaintiff on her own without a referral presented to Dr. Paul B. Suh, an orthopaedic surgeon, complaining of neck, mid-back, and left-arm pain. Dr. Suh noted that plaintiff's greatest complaint was mid-back pain. Plaintiff gave a history of another bus rolling into her bus with pain beginning twenty minutes later. Plaintiff indicated that she had neck pain that improved with physical therapy and that plaintiff is bothered most by the mid-back pain. Dr. Suh noted that plaintiff has a history of pain prior to the March 2007 incident from a previous bus accident. After examining plaintiff and taking x-rays, Dr. Suh diagnosed plaintiff with cervical and thoracic degenerative disc disease. Dr. Suh noted minimal range of motion in neck and low back
15. Plaintiff underwent an MRI which showed multiple levels of disk desiccation and a disc bulge at C6-7, which caused left foraminal stenosis. Based on the MRI, Dr. Suh clarified the diagnosis to be cervical degenerative disc disease and cervical radiculopathy.
16. Plaintiff received a restriction on her lifting and was instructed to take a break from a driving position each hour as of her June 13, 2007 visit with Dr. Suh. On August 3, 2007, Dr. Suh noted that plaintiff's symptoms had improved and released plaintiff to full duty. *Page 7 
17. On August 28, 2007, Dr. Suh restricted plaintiff to no lifting floor to waist, no overhead work, no lifting more than 20 pounds, and limited bending and twisting, with a change or position every hour. Work was limited to a six hour per day maximum. Dr. Suh noted that plaintiff was having neck and left arm pain as of his visit of November 7, 2007, but indicated that she continued working up to 11 hours per day as a bus driver.
18. On February 28, 2008, as Dr. Suh performed an anterior cervical diskectomy and fusion on plaintiff. Following the surgery, as of the date of Dr. Suh's deposition, plaintiff remained unable to work in any capacity.
19. Based upon the medical evidence, lay and expert testimony, and the video of the accident from Ms. Wright's bus, the Full Commission finds plaintiff's testimony to be inconsistent with the greater weight of the evidence.
20. Although Dr. Suh opined that the March 9, 2007 bus incident aggravated plaintiff's pre-existing condition of cervical degenerative disc disease, the greater weight of the evidence is to the contrary. Dr. Suh relies on the veracity of plaintiff's version of the events and complaints surrounding her cervical condition and his opinion regarding causation and aggravation of plaintiff's preexisting condition is inconsistent with the greater weight of the evidence.
 ***********
Based upon the foregoing Stipulations and Findings of Fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. In workers' compensation cases, plaintiff has the burden of proving every element of compensability. As part of this burden, plaintiff must present convincing evidence *Page 8 
establishing these elements. N.C. Gen. Stat. §§ 97-2(6), 97-2(9);Harvey v. Raleigh Police Department,96 N.C. App. 28, 384 S.E.2d 549, disc. rev. denied,325 N.C. 706, 388 S.E.2d 454 (1989).
2. There must be proof of a causal relationship between the injury and the employment. Booker v. Medical Center,297 N.C. 458, 256 S.E.2d 189 (1979). Where the exact nature and probable genesis of a particular type of injury involves complicated medical questions far from the ordinary experience and knowledge of laymen, only an expert can give competent opinion evidence as to the cause of the injury. Click v. Freight Carriers,300 N.C. 164, 265 S.E.2d 389 (1980). Expert opinion that rests on speculation and conjecture, or unproven facts, is not sufficiently reliable to qualify as competent evidence concerning the nature and cause of the injury. Young v. Hickory Bus. Furn.,353 N.C. 277, 538 S.E.2d 912 (2000). As Dr. Suh's testimony regarding the causation of plaintiff's cervical condition was based upon unproven facts presented by plaintiff, Dr. Suh's opinion is not sufficiently reliable to qualify as competent evidence concerning the nature and cause of plaintiff's injuries. Id. In the instant case, dubious histories related by plaintiff form the bases of information contained in medical records and other evidence.Id.
3. Plaintiff has failed to meet her burden of proving by the greater weight of the evidence that she sustained a compensable injury by accident or specific traumatic incident arising out of and in the course of his employment with defendant-employer on March 9, 2007 or that she suffered an aggravation of a preexisting condition. Id.
 ***********
Based upon the foregoing Findings of Fact and Conclusions of Law, the Full Commission enters the following: *Page 9 
 AWARD
1. Plaintiff's claim is hereby DENIED.
2. Each side shall pay its own costs.
This the ___ th day of October 2009.
 S/___________________
 STACI T. MEYER
 COMMISSIONER
CONCURRING:
 S/___________________ DIANNE C. SELLERS COMMISSIONER
 S/___________________ LAURA KRANIFELD MAVRETIC COMMISSIONER